UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ACACIA CENTER FOR JUSTICE,      )
      )
1025 Connecticut Ave, NW, Suite 1000A   )
(#1008) Washington, DC 20036     )
      )
*Plaintiff*,      )      Civil Action No.: 25-3868
      )
v.      )
      )
UNITED STATES DEPARTMENT OF   )
JUSTICE,      )
      )
950 Pennsylvania Ave., NW, Washington, )
DC 20530.      )
      )
*Defendant.*      )

## INTRODUCTION

1. Without notice or explanation, certain immigration courts around the country have ceased publishing or distributing their dockets to the public.

2. Immigration courts continue to generate and rely on daily dockets as a necessary administrative tool for managing proceedings. But those dockets are no longer consistently made available to the public.

3. Even when dockets are made public, some courts will now redact the names of parties, making it impossible for litigants to find their own immigration hearing.

4. Federal regulations mandate that immigration proceedings are open to the public absent exceptional circumstances.

5. Denying public access to these dockets effectively blocks members of the public from observing immigration court hearings.

1

6. Withholding dockets also obstructs the ability of legal service providers to coordinate representation and deliver effective representation and related legal services.

7. No statute, regulation, or published policy authorizes the government's refusal to publish immigration court dockets.

8. Extant government policy even mandates timely disclosure of local immigration court dockets to the public at set intervals.

9. Plaintiff seeks disclosure of any policy governing docket publication and the ongoing, proactive disclosure of unredacted immigration court dockets.

PARTIES

10. Plaintiff Acacia Center for Justice ("Acacia" or "Plaintiff") is a nonprofit corporation that coordinates programs in collaboration with a nationwide network of legal and pro bono mentorship organizations that provide legal assistance to people in immigration proceedings to maximize access to representation for otherwise pro se individuals.

11. Defendant the United States Department of Justice ("DOJ" or "Defendant") is a federal agency within the meaning of FOIA.

12. The Defendant contains multiple different components including the Executive Office for Immigration Review ("EOIR").

13. Through the EOIR, Defendant adjudicates all immigration claims. *See* 8 CFR 1003.0(a) ("EOIR shall include the Board of Immigration Appeals, the Office of the Chief Immigration Judge, the Office of the Chief Administrative Hearing Officer, the Office of Policy, the Office of the General Counsel, and such other components and staff as the Attorney General or the Director may provide.").

JURISDICTION AND VENUE

14. This Court has jurisdiction over Plaintiff's FOIA claims for prompt access to released records under 5 U.S.C. § 552(a)(3)(A) and affirmative disclosure of certain records under 5 U.S.C. § 552 (a)(1) and (a)(2) pursuant to 5 U.S.C. § 552 (a)(4)(B), the Administrative Procedure Act, 5 U.S.C. § 701 *et. seq.*, and U.S.C. § 1331 (federal question) and 28 U.S.C. § 1391(e) (federal agency).

15. This is a proactive FOIA disclosure case. Because proactive disclosure is mandatory, D.C. Circuit precedent permits a plaintiff to bring proactive disclosures claims even without having first filed a corresponding § 552(a)(3) FOIA request for those records or completing the administrative review required for (a)(3) requests. *See, e.g., Al Otro Lado, Inc. v. Immigration and Customs Enforcement*, 1:23-cv-01525, (D.D.C. Dec. 19, 2023) (minute order recognizing that a proactive disclosure lawsuit does not require an initial FOIA request under (a)(3)) (quoting *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) ("[A] plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).").[1]

16. This Court has jurisdiction to enjoin the agency from withholding agency records and order production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B) ("the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.")

---

[1] *See also Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) ("[T]he opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and ... such requirement is judicially enforceable without further identification under Section 552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2).")

17. As a jurisdictional matter, FOIA only permits an agency more time to complete a request if it can show exceptional circumstances and that it has been exercising due diligence in locating and processing requested records. *See* 5 U.S.C. § 552(a)(6)(C) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.")

18. Venue is proper within this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

FACTS

19. Plaintiff brings this action to compel Defendant's compliance with its FOIA proactive disclosure obligations under § 552(a)(2) or §552(a)(1).

20. FOIA "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

21. § 522(a)(2)'s original text required federal agencies to make certain records "available for public inspection and copying" on a proactive basis.[2] § 522(a)(2) thus became known as the "reading room" provision because "agencies historically met their § 522(a)(2) obligations by placing the appropriate records in a physical, public reading room." *Animal*

---

[2] *See* DOJ, *Department of Justice Guide to the Freedom of Information Act* (July 23, 2014), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.pdf.

*Legal Def. Fund v. U.S. Dep't of Agriculture*, 935 F.3d 858, 862 (9th Cir. 2019). FOIA was later amended to require online publication of § 552(a)(2) records.

22. In relevant part, §552(a)(2) mandates proactive disclosure of the following categories of records:

> Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—
>
> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public;
>
> (D) copies of all records, regardless of form or format—
>
> (i) that have been released to any person under paragraph (3); and
> (ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or
> (II) that have been requested 3 or more times; and
>
> (E) . . ."current indexes providing identifying information for the public as to any matter . . . . required by this paragraph to be made available or published . . . [including] a general index of the records referred to under subparagraph (D).

23. D.C. Circuit precedent forbids a court from ordering an agency to publish records online to fulfil its § 552(a)(2) obligations.[3]

---

[3] *Citizens for Responsibility & Ethics in Wash.,* 846 F.3d at 1243 ("Given *Kennecott's* construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency "make available for public inspection" documents subject to the reading-room provision . . .").

24. However, nothing "prevents a district court from, consistent with section 552(a)(4)(B), ordering an agency to provide to the plaintiff documents covered by the reading-room provision."[4]

25. § 552(a)(2) governs the publication of only some agency policies or rules. The other proactive disclosure provision governing agency policy publication is § 552(a)(1), which requires Federal Register publication of certain records, including:

> (C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;
> (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and
> (E) each amendment, revision, or repeal of the foregoing.

26. § 552(a)(1) also has an enforcement provision barring use of an unpublished record against a member of the public: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."

27. Defendant's unpublished records currently remain secret. FOIA demands publication of those records under one of the two proactive disclosure provisions. However, until the records are made public, it cannot be determined whether the proper proactive disclosure provision is § 552(a)(1) or § 552(a)(2).

---

[4] *Id.*

**In violation of FOIA's proactive disclosure provisions, Defendant no longer timely publishes its immigration court dockets.**

28. Defendant operates the United States immigration court system, adjudicating asylum, removal, and other immigration claims and cases. *See* 8 CFR 1208.2(b) (giving immigration judges jurisdiction over most asylum claims); 8 CFR 1240.1(c) ("The immigration judge shall receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing.").

29. An immigration hearing is set by order of the immigration court. "While the EOIR Director and Chief Immigration Judge have the power to issue some operational instructions and policies regarding case management, *see* 8 C.F.R. § 1003.0(b); 8 C.F.R. § 1003.9(b), '[t]he Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings.'" *Am. Immigr. Council v. Exec. Off. for Immigr. Rev.*, No. CV 23-1952 (RC), 2025 WL 506572, at *4 (D.D.C. Feb. 14, 2025) (quoting 8 C.F.R. § 1003.18(a)). *See* 8 CFR § 1003.18(a) ("Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings.").

30. According to the Immigration Court Practice Manual 4.15(e), hearing dates are set by order of the immigration court at a master calendar hearing: "As a general matter, the purpose of the master calendar hearing is to: . . . set deadlines for filing applications for relief, briefs, motions, pre-hearing statements, exhibits, witness lists, and other documents."

31. Defendant routinely collates these hearing dates into immigration court dockets.

32. By default, all immigration proceedings are open to the public. *See* 8 CFR § 1003.27 ("All hearings, other than exclusion hearings, shall be open to the public . . .").

7

33. Many immigration cases, particularly those involving children, require careful coordination of services between numerous service providers or nonprofit organizations.

34. Publicly posting immigration dockets permitted attorneys and nonprofits to coordinate their representation of immigrants. For example, one nonprofit might provide the attorney for a detained child while another might provide the interpreter allowing the child and attorney to communicate.

35. Contrary to its prior practice, Defendant has begun selectively refusing to publicly disclose its dockets.

36. Defendant's refusal to publish immigration court dockets can effectively deprive individual immigrants of adequate representation.

37. In another instance, one immigration court began selectively redacting the names and identifying numbers of litigants. This selective redaction prevents litigants from learning basic information about their own hearings, such as its time and location.

38. The immigration court in question has not explained the reason for redacting docket information from hearings open to the public, nor is it clear how an immigration court is authorized to selectively redact docket information.

39. Because these dockets are a collation of court orders, they constitute an index under § 552(a)(2)(E) of "orders, made in the adjudication of cases" under § 552(a)(2)(A) and must be proactively published as required by both subsections.

40. Without publication, the hearing dockets cannot be cited against a member of the public without timely actual notice of the docket's contents.

41. For example, if a litigant lacked actual notice of the order setting their hearing date and Defendant had failed to publish its dockets, the docket could not be cited as evidence against the litigant should they fail to appear.

### Defendant's own published policies require timely publication of immigration court dockets.

42. The Defendant's immigration court docketing system is detailed in its Uniform Docketing System Manual ("UDSM").

43. The UDSM must be followed by all immigration courts.

44. The only means of amending the UDSM is through a superseding policy issued by the Chief Immigration Judge. *See* UDSM, I-6, ¶ D. ("Operational procedures are amended or created through Operating Policies and Procedures Memoranda (OPPM) issued to the immigration courts by the Chief Immigration Judge.").

45. The UDSM mandates that all immigration courts publicly post a copy of the immigration docket before proceedings begin. *See* UDSM, IV-8, ¶ A ("The Immigration Court will post a copy of the Master Calendar summary in the public waiting areas by 2:00 PM on the Friday before the week of scheduled hearings."); ¶ B ("The immigration court will post a copy of the Individual Calendar Summary in the public waiting area by 2:00 PM on the Friday before the week of scheduled hearings.").

### Defendant has failed to publish any policy permitting immigration courts to selectively halt timely publication of immigration court dockets.

46. As described above, it is currently Defendant's policy to make immigration court dockets available to the public at all immigration courts across the country.

47. If Defendant rescinded that policy and now permits immigration courts to not timely publish their immigration dockets, this new docket policy must be published under § 552(a)(2).

9

48. To date, Defendant has failed to publish any updated docket policy permitting the selective publication of dockets or allowing an immigration court to cease publishing dockets all together.

49. If such a policy exists, it must, at minimum, be published in Defendant's online FOIA reading room.

50. However, because docket publication affects litigants' right to counsel and would constitute a "statement[] of the general course and method by which its functions are channeled and determined," the policy—should it exist—would likely require publication in the Federal Register under § 552(a)(1).

**Defendant ignored Plaintiff's proactive disclosure deficiency notification alerting Defendant of its failure to properly publish its immigration court dockets or its policy cancelling publication of immigration court dockets.**

51. On September 18, 2025, Plaintiff's counsel sent Defendant a proactive disclosure deficiency notification alerting Defendant of its failure to timely published immigration court dockets and its failure to publish the policy reversing the practice of publishing immigration court dockets. *See* Exhibit 1.

52. The September 18, 2025 proactive disclosure deficiency notification informed Defendant that its immigration court dockets were subject to § 552(a)(2) disclosure because the immigration court hearing dates were set by immigration court order and were thus "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."

53. The notification also informed Defendant that its immigration court dockets were collections of final orders and thus must also be published as a § 552(a)(2)(E) index.

54. As illustrated by Defendant's prior practice of publishing immigration court dockets, immigration court dockets are also records that "have become or are likely to become the subject of subsequent requests," and thus are also required to be published under § 552(a)(2)(D).

55. Plaintiff's notification requested that Defendant contact Plaintiff within seven business days in order to reach a mutually agreeable diplomatic resolution and avoid litigation.

56. That same day, Defendant assigned the proactive disclosure notification the tracking number 2025-99719.

57. In a September 19, 2025 email to Plaintiff's counsel, Defendant stated that it was denying the notification on the grounds that "it has been determined that your correspondence was not a request for records under the FOIA."

58. Because § 552(a)(3)'s administrative proceedings do not apply to proactive disclosures, Plaintiff cannot administratively appeal Defendant's refusal to correct its proactive disclosure deficiency. *See Citizens for Responsibility & Ethics in Wash.*, 846 F.3d at 1240.

59. Defendant has failed to publish any corresponding records describing its collaboration with Defendant, whether in its reading room or in the Federal Register.

60. Any exhibits are incorporated by reference.

CLAIMS

COUNT I: VIOLATION OF 5 U.S.C. § 552(a)(2): FAILURE TO PUBLISH<br/>IMMIGRATION COURT DOCKETS

61. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

62. As described previously, Congress requires mandatory online publication of certain agency records under § 552(a)(2).

63. Plaintiff properly notified Defendant that it has failed to timely publish or index its immigration court dockets as required under § 552(a)(2).

64. Under § 552(a)(2), Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to disclose and continue to disclose its immigration dockets in a timely manner.

65. Alternatively, Defendant may voluntarily publish these same records to its online FOIA reading room in an appropriately indexed manner.

COUNT II: VIOLATION OF 5 U.S.C. § 552(a)(2): FAILURE TO PUBLISH NEW DOCKET POLICY

66. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

67. As described previously, Congress requires mandatory online publication of certain agency records under § 552(a)(2).

68. Plaintiff properly notified Defendant that it has failed to timely publish its new policy permitting immigration courts to stop publishing their immigration court dockets.

69. Under § 552(a)(2)(B), Defendant is required to publish all "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."

70. Similarly, under § 552(a)(2)(C), Defendant is required to publish all "administrative staff manuals and instructions to staff that affect a member of the public."

71. Defendant's failure to publish any new policy permitting immigration courts to no longer publish their immigration court dockets is thus a violation of § 552(a)(2) under one of these two subsections.

72. Under § 552(a)(2), Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to disclose and continue to disclose this policy and any future policies affecting docket publication practices.

73. Alternatively, Defendant may voluntarily publish these same records to its online FOIA reading room in an appropriately indexed manner.

COUNT III: VIOLATIONS OF 5 U.S.C. § 552(a)(1)

74. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

75. As described previously, Congress requires mandatory Federal Register publication of certain agency records under § 552(a)(1).

76. Defendant has failed to publish a new docket publication policy, as described above.

77. At this time, it is unclear whether this policy should be published under § 552(a)(1) or § 552(a)(2).

78. Defendant has failed to properly publish its immigration docket publication policy under either subsection, having not published the records in its online reading room or in the Federal Register.

79. Thus, if an immigration docket publication policy exists and does not fall under § 552(a)(2) as described in Count II, it must be published in the Federal Register as required under § 552(a)(1).

80. Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to properly publish any responsive records covered by § 552(a)(1) in the Federal Register.

13

<u>CLAIMS FOR RELIEF</u>

1. Enter judgment on all counts in favor of Plaintiff and against Defendant.

2. Order Defendant to proactively disclose its immigration court dockets in advance of immigration hearings under § 552(a)(2).

3. If Defendant has a new, unpublished docket publication policy, determine whether Defendant was required to publish the responsive records under § 552(a)(1) or § 552(a)(2).

4. Declare Defendant's withholding of a new docket publication policy, should one exist and whether those records fall within § 552(a)(1) or (a)(2), unlawful and order Defendant to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all responsive records.

5. Declare that any previously unpublished records either cannot be used to adversely affect a member of the public, as described in § 552(a)(1), or, under § 552(a)(2), that any unpublished record affecting "a member of the public may [not] be relied on, used, or cited as precedent by an agency against a party other than an agency" absent actual and timely notice to the affected party.

6. Award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412(d)(1)(A).

7. Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Respectfully submitted this November 5, 2025.

/s/ Andrew Fels
Andrew Fels
TN0025 (TN 36005)
*Al Otro Lado*
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 5, 2025 the foregoing was filed electronically through ECF/CM. On this same date, electronic service will be made to all counsel of record through the Court's ECF/CM system.

<u>/s/ Andrew Fels</u>
Andrew Fels
TN0025 (TN 36005)
*Al Otro Lado*
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com